UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| CUSHAW BANACEK BARNETT, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) 1:12-cv-00051-JAW |
| | ) |
| DANIEL J. LYNCH, | ) |
| | ) |
| Defendant | ) |

**RECOMMENDED DECISION**

Cushaw Banacek Barnett, a prisoner at the Williamsburg Federal Correctional Institute in Salters, South Carolina, has filed a complaint against Chief Deputy Clerk Daniel J. Lynch of the United States District Court, District of New Hampshire. Following the recusal of all judicial officers in the District of New Hampshire, the matter was assigned to Chief Judge Woodcock of the District of Maine and referred to me for disposition of those matters routinely handled by a magistrate judge in the District of Maine. Following my initial determination that Barnett qualified for *in forma pauperis* status as a prisoner litigant, I have now screened the case pursuant to 28 U.S.C. § 1915A.[1] Following my review of the complaint and applicable law, I now recommend that this Court dismiss this complaint both because it seeks damages from an immune party and because it is frivolous and fails to state a claim.

---

[1] Barnett indicates in his most recent filing that his status as a prisoner litigant is about to change and that he will be released from custody in early June 2012. (ECF No. 21.) If this *in forma pauperis* application were before the Court pursuant to 28 U.S.C § 1915(e)(2), as non-prisoner litigation, I would nevertheless recommend dismissal prior to service for the reasons stated herein and under the authority of Neitzke v. Williams, 490 U.S. 319, 324 (1989). See also Mallard v. U.S. Dist. Ct. S. D. Iowa, 490 U.S. 296, 307-308 (1989) (construing a previous version of section 1915 involving *in forma pauperis* actions and noting: "Section 1915(d) . . . authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have power to do so even in the absence of this statutory provision.").

**Complaint Allegations**

Barnett has sued Mr. Lynch in both his individual and official capacities, claiming that Lynch violated Rule 79 of the Federal Rules of Civil Procedure in that Lynch did not properly handle a document called "Demand for an Expatriation Proceeding" that Barnett filed with the Court on January 20, 2012. According to Barnett, his cause of action in this case arises under Section 32 of the Judiciary Act of 1789, which provides that "no . . . process, . . . or other proceeding in civil cases in any court of the United States shall be abated, arrested, quashed or reversed for any defect or want of form. . ." An Act to Establish the Judicial Courts of the United States, 1 Stat. 73, ch. 20, § 32 (1789). The gravamen of Barnett's complaint is that on January 26, 2012, Lynch, in his capacity as a clerk, not a judge, mailed Barnett a letter advising him that he could obtain information on how to renounce his United States citizenship from the United States State Department, but that the United States District Court "does not have jurisdiction over initial requests to renounce citizenship." (Compl., ECF No. 1, Ex. B.)

Barnett explains that the "official capacity" suit is brought in accordance with 28 U.S.C. § 1737, because as a clerk in the court Lynch is bonded and Barnett intends to proceed under that bond to obtain money damages. He is also suing Lynch in his personal capacity for $500,000.00. Barnett's claim to monetary damages, both personally and officially under the claimed bond, arises from the mental anguish Barnett suffered because Lynch "impaired" his "'natural and inherent right' to expatriate" and "greatly hindered [him] from having access to the court by telling [Lynch's] subordinates not to accept [his] phone calls." (ECF No. 1 at p. 4.)

Barnett also filed a document in this case which is identified as a motion to have the Court clarify a question of law regarding his constitutional and statutory standing to bring a civil

2

suit against a United States citizen. (ECF No. 6.) I now direct the Clerk to terminate that motion, because there is no point in the Court attempting to formulate an answer to this meaningless question of law. I have assumed, for purposes of this recommended decision, that Barnett is a human being who claims to have been injured by a federal judicial employee and thus has "standing" to bring this lawsuit. Whether he is a United States citizen, a Mexican citizen, a Canadian citizen, or a "stateless" person is irrelevant to the recommendation I am providing the Court in this decision.

## Additional Procedural Background

The District of New Hampshire has a Local Rule regarding the treatment of case opening documents. It provides as follows:

> Payment of Fees
>
> Except as otherwise required by law or ordered by the court, the clerk's office shall not docket any filings, issue any process, or render any other service for which a fee is prescribed by statute or by the Judicial Conference of the United States unless the fee is prepaid or an *in forma pauperis* motion has been filed.
>
> The clerk's office shall docket any notice of appeal upon receipt.

D. N.H. Loc. R. 4.4. The Local Rule is adopted in accordance with 28 U.S.C. § 1914(c), which provides as follows:

> The clerk of each district court shall require the parties instituting any civil action, suit or proceeding in such court, whether by original process, removal or otherwise, to pay a filing fee of $350, except that on application for a writ of habeas corpus the filing fee shall be $5.
>
> (b) The clerk shall collect from the parties such additional fees only as are prescribed by the Judicial Conference of the United States.
>
> (c) Each district court by rule or standing order may require advance payment of fees.

Thus, the Deputy Clerk must comply with Federal Rule of Civil Procedure 79, as relied upon by Barnett, regarding accepting all papers filed with the Court once a case is entered on the docket, but clerk's office personnel are subject to the requirements of the Local Rule arising from the statutory dictate as well.

Consistent with the language of the statute, the New Hampshire United States District Court maintains an electronic repository folder where it maintains case opening documents in an electronic format when those documents are filed without the appropriate filing fee or a properly completed *in forma pauperis* motion. Rather than opening a "cv" case, which has a certain statistical value with the Administrative Office of the Courts, the documents are electronically maintained as "fp" cases until such time as the filing fee is paid or a properly completed motion is in order for presentation to a judicial officer.

Following receipt of Lynch's letter, on February 8, 2012, Barnett resubmitted his demand for a declaratory judgment regarding his citizenship status, originally submitted January 20, 2012, according to Barnett's certification of service. The demand was not accompanied by a filing fee or an application to proceed *in forma pauperis*, nor had the original demand been accompanied by those documents. The second demand, which appears to be basically identical to the first demand which prompted Lynch's initial response to Barnett, was handled by the Clerk's Office in accordance with the procedures developed pursuant to the Local Rule. On February 8, 2012, Barnett also submitted the current case against Daniel Lynch. The demand for expatriation was docketed, as captioned, Barnett v. United States, 1:12-fp-50, and assigned to the "fp" docket, awaiting receipt of the filing fee or application to proceed *in forma pauperis*. Barnett v. Lynch, 1:12-fp-51, also received the "fp" designation. Barnett was given sixty days to

4

either pay the fee or file the application to proceed *in forma pauperis* by entry by the Clerk of Court.  (ECF No. 2, under both fp docket entries.)  At this point in time, no judicial officer had reviewed the case because no case had been opened on the civil docket.  Mail sent to the address Barnett provided was returned, unable to forward.  (ECF No. 3, under both fp docket entries.)  The Clerk learned that Barnett was then housed in the United States Penitentiary in Atlanta, Georgia, and resent the clerk's directive to him there, reminding him of his obligation under N.H. Local Rule 83.6(e) to notify the court of any change of address.  (ECF No. 4, under both fp docket entries.)  On March 12, 2012, Barnett sent a letter to the Clerk voluntarily dismissing his case against the United States, which had never been officially opened as a civil matter, acknowledging that his status as a United States citizen was not determined by Court action in the first instance.  (Case No. 1:12-fp-50, ECF No. 5.)  The "case" was closed for essentially the reason provided by Chief Deputy Clerk Lynch in his initial letter to Barnett less than two months earlier.  Barnett never paid the fee nor filed an *in forma pauperis* application.

In regard to the current case, Barnett did ultimately submit an application to proceed *in forma pauperis*.  (ECF No. 10.)  This case was then converted from an "fp" case to a civil case and formally assigned to the docket by clerk's entry dated April 19, 2012.  Barnett's application to proceed without prepayment of the fee was granted by me (ECF No. 20) and thus the case against Lynch is now before this Court.

**Discussion**

If by this complaint Barnett intends to sue Daniel Lynch in his official capacity, his complaint is tantamount to a complaint against a governmental entity itself, in this case the United States District Court for the District of New Hampshire.  The Bivens doctrine may in

5

certain instances allow constitutional claims against federal officials, in their individual capacities, for actions taken under color of federal law. McCloskey v. Mueller, 446 F.3d 262, 271-272 (1st Cir. 2006) ("[T]he availability of that doctrine does not override bedrock principles of sovereign immunity so as to permit suits against the United States, its agencies, or federal officers sued in their official capacities.")  However, a federal district court is a governmental entity entitled to immunity if Lynch is sued in his official capacity. Mooney v. Clerk of Courts, Dist. of N. H., 831 F. Supp. 7, 10 (D. N.H. 1993) (Carter, C.J., sitting by designation).

If Barnett is attempting to sue Lynch for negligence or some other unidentified tort claim in conjunction with the manner in which he handled court papers and directed his staff regarding telephone calls, whether pursuant to a bond or otherwise, his claim is subject to dismissal under 28 U.S.C. § 2675, the Federal Tort Claims Act. (Id.)  To preserve an FTCA claim, the claimant must demonstrate he has first "presented" the claim to the appropriate federal agency. 28 U.S.C. § 2675(a). The claim is "presented" when the agency receives "from a claimant" or "his duly authorized agent or legal representative," an "executed" Standard Form 95 (SF-95) "or other written notification of an incident," accompanied by a "claim for money damages" in a "sum certain." 28 C.F.R. § 14.2(a). Tort suits against clerks of court are subject to FTCA jurisdictional requirements. See e.g. Matthews v. United States, 73 Fed. Cl. 524, 525 (2006)(applying principles of FTCA in suit against clerks of court and others). There is no evidence or plausible inference in this case that Barnett complied with the FTCA prior to bringing this lawsuit.

Finally, I consider the possibility that Barnett conceives his claim as a Bivens-style action alleging a violation of a federal constitutional or statutory right by an individual acting under

6

color of federal law.  See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).  In limited circumstances a federal officer may be individually liable for a federal constitutional or statutory violation under the Bivens doctrine.  First, it is highly probable that Lynch is entitled to absolute "quasi-judicial" immunity, akin to that available to a prosecutor who exercises court-related functions.   However, there is no reason to apply that doctrine to Lynch's decisions regarding the initial treatment of Barnett's written inquiry concerning expatriation given the absolute failure of the complaint to state a nonfrivolous claim against Lynch in any event.  See Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 432-33 & nn.4 & 5 (1993) (noting it would be the burden of the party asserting absolute immunity to demonstrate this entitlement on Bivens claims, and discussing the functional approach to judicial immunity as it relates to court reporters).  In this case I do not rely upon absolute judicial immunity in reaching my ultimate recommendation.  The grounds for dismissing the individual capacity claim against Lynch is pretty straight-forward in the post-Ashcroft v. Iqbal, 556 U.S. 662, 675-76 (2009) landscape.

      The First Circuit has explained it thusly:  "The make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief."  Sepúlveda– Villarini v. Dep't of Educ. of P.R ., 628 F.3d 25, 29 (1st Cir. 2010).  In the present case the complaint allegations against Lynch consist of two facts:  (1) Lynch sent Barnett a gratuitous, but polite, letter informing him that his request for an expatriation proceeding to be held in the District Court was misplaced; and (2) Lynch told his subordinates they did not have to accept phone calls from Barnett.  The frivolous nature of this claim is apparent when one considers that Barnett himself voluntarily "dismissed" his non-case for which he had neither paid

the filing fee nor sought leave to proceed *in forma pauperis* for approximately the same reasons as Lynch had previously noted in his first letter to Barnett. If ever there was much ado about nothing, this case is the prime example.

I suppose that it is conceivable that a clerk's deliberate failure to properly docket a pleading from a litigant could deny that litigant access to the court and result in a constitutional deprivation. But there is nothing plausible in these allegations to suggest that Barnett was such a litigant. Barnett himself acknowledged in his March voluntary dismissal that his demand for expatriation was not properly addressed to the District Court. His decision to nevertheless pursue a lawsuit against Lynch based upon some perceived emotional distress claim simply does not pass the straight-face test.

If the Court seriously entertained this complaint as nonfrivolous, Lynch would nevertheless be entitled to dismissal following screening under the doctrine of qualified immunity. Qualified immunity shields a federal official from money damages unless the official violated a federal statutory or constitutional right and that right was clearly established at the time of the challenged conduct. Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Neither Federal Rule of Civil Procedure 79 nor any other federal statutory or constitutional provision that I am aware of requires a deputy clerk to enter on the "civil docket" every letter of inquiry received at the courthouse, unaccompanied by a filing fee or an application to proceed *in forma pauperis*. If that right exists, it certainly was not clearly establish on January 26, 2012, when Lynch wrote Barnett the letter that is at the epicenter of this lawsuit.

Lynch did not refuse to accept the inquiry as a case because it was not in the form

prescribed by the rules of procedure within the contemplation of Rule 5(d)(4), but rather because it did not comply with 28 U.S.C. § 1914(c), regarding the filing fee or application to proceed *in forma pauperis*. The New Hampshire Local Rule reasonably treats that failure as a matter of substance, not form, and Lynch and the Clerk's Office did no more than follow their procedures pursuant to the federal statute. There was "no harm, no foul" in Lynch's initial attempt to handle the matter informally and the docket reflects that the Clerk's Office extended every courtesy to Barnett in trying to make sure he received the information he needed to get both of his actions placed on the civil docket, if that is what he wanted done. Likewise, I know of no constitutional or statutory violation that is implicated by the allegation that clerk's office personnel were told they did not have to accept Barnett's telephone calls. His written submissions were all accepted and appear to be part of the record.

## Conclusion

Based on the foregoing, I recommend that the Court summarily dismiss this complaint prior to service for the reasons stated herein.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

May 17, 2012

                        /s/ Margaret J. Kravchuk
                        U.S. Magistrate Judge